331 So.2d 923 (1976)
Frank S. PARKER, general guardian of persons and Estates of Melanie Anne White, et al.
v.
FORD MOTOR COMPANY and Louisville Motor Company.
No. 48634.
Supreme Court of Mississippi.
May 4, 1976.
Crawley & Ford, Kosciusko, for appellants.
Watkins & Eager, Hassell H. Whitworth, Elizabeth Hulen, Jackson, Hathorn & Hathorn, Fair & Mayo, Louisville, for appellees.
Before GILLESPIE, ROBERTSON and LEE, JJ.
ROBERTSON, Justice for the Court:
This is a products liability case. Mrs. Jo Anne Parker White, the widow, and Frank S. Parker, Guardian of Melanie Anne White and Melissa Kaye White, minors, brought suit in the Circuit Court of Winston County, Mississippi, against Ford Motor Company and Louisville Motor Company, to recover damages for the wrongful death of Billy Charles White.
On February 18, 1972, Wayne White purchased a new 1972 Ford pickup truck from Louisville Motor Company, for his son, Billy Charles White. Billy Charles *924 was 26 years old, and planned to use this pickup truck in his plumbing business.
About 7:45 p.m. on September 9, 1972, White was driving his pickup truck on a blacktop state highway in a southwesterly direction toward Louisville, Mississippi. He had negotiated a curve to the right, had covered a short straightaway stretch and was attempting to make a rather abrupt curve to the left when his pickup truck left the right side of the highway, traveled along a shallow roadside ditch, and crashed into an embankment. White was dead on arrival at the hospital from a broken neck or head injury.
Berlin Robinson, a friend of White, was following in his 1966 Ford pickup truck about 150 to 200 yards behind him at the time of the fatal accident. He testified that the night was clear, that he and White were driving about 50 or 55 miles an hour, that White was driving normally when his truck left the highway and crashed into the embankment.
After plaintiffs had rested, the trial court sustained motions for directed verdicts in favor of Ford Motor Company and Louisville Motor Company.
White's pickup truck was not quite seven months old and had been driven 11,487 miles at the time of the fatal accident. It was a total loss.
Dr. Will T. McKie, Jr., professor of mechanical engineering at Mississippi State University and a consulting engineer on automobile problems, testified that ten days after the accident, on September 19, 1972, he carefully removed the steering column and entire steering mechanism from the decedent's truck, disassembled the steering mechanism and carefully examined it.
His testimony as an expert was that the retainer clamp on the steering shaft was improperly installed, that by virtue of this improper positioning of the retainer clamp undue stress and strain was placed on a fabric insulator which eventually caused it to tear and the steering mechanism to separate. The immediate result would be that the driver would have no control over the steering and the front wheels. Dr. McKie was positive that the pickup truck left the manufacturer in this unsafe condition, and that this was the proximate cause of the fatal accident.
Dr. Richard Forbes, an associate professor of mechanical engineering at Mississippi State, at the instance of Dr. McKie, carefully examined and studied the steering column and steering mechanism from the wrecked pickup truck. Dr. Forbes confirmed Dr. McKie's findings that the retainer clamp was improperly installed, thereby overloading the fabric insulator and causing it to eventually tear and give way. This caused the steering mechanism to separate, the connection with the front wheels to be lost, and the driver to have no control of the steering.
Forbes also was positive that the steering mechanism left the manufacturer in this unsafe condition, and that the separation of the steering linkage was the proximate cause of the fatal accident.
White, the driver, was killed in the accident, so he could not testify as to what actually happened. Usually in such a case the only evidence that can be adduced is circumstantial evidence. This is in the form of opinions of experts arrived at after carefully studying and examining the mechanical parts of the wrecked vehicle.
In Johnson v. State, 23 So.2d 499 (Miss. 1945), this Court stated, with reference to circumstantial evidence:
"It was long ago held by this Court in the case of Browning v. State, 33 Miss. 47, citing Cicely v. State, 13 Smedes & M. 202, 211, and the principle has been uniformly adhered to since that time, that the sufficiency of circumstantial evidence is peculiarly for the determination of the jury, ...." 23 So.2d at 500. (Emphasis added).
*925 In Cameron v. Hootsell, 229 Miss. 80, 90 So.2d 195 (1956), we reiterated this principle in these words:
"The evidence is circumstantial, and we have held that where a case turns upon circumstantial evidence it should rarely be taken from the jury." 229 Miss. at 85, 90 So.2d at 197.
This principle was again repeated in Matthews v. Carpenter, 231 Miss. 677, 97 So.2d 522 (1957).
The opinions of mechanical experts as to latent defects were considered by the juries in reaching their verdicts in Ford Motor Company v. Cockrell, 211 So.2d 833 (Miss. 1968); Ford Motor Company v. Dees (Ford Motor Company v. Adams), 223 So.2d 638 (Miss. 1969).
The trial court was in error in directing a verdict for the manufacturer, Ford Motor Company. The testimony presented a question for the jury to decide.
The trial court was correct in directing a verdict for Louisville Motor Company, the retail dealer, because the testimony was that it was a latent defect, not discoverable by visual inspection.
This Court affirmed the jury verdict in favor of Mendenhall Motor Company, the retail dealer, in Ford Motor Company v. Cockrell, supra, because the defect in the wiring system was latent.
In Sam Shainberg Company of Jackson v. Barlow, 258 So.2d 242 (Miss. 1972), we held that neither the wholesaler nor retailer of a pair of shoes would be liable for a latent defect in the heel of one of the shoes, where both the wholesaler and retailer sold the shoes in exactly the same condition they were in when they came from the manufacturer.
In the case of a defective ketchup bottle, we said:
"The defect in the bottle in question was not known to Early-Gary, and evidently, it could not be discovered by a visual inspection which was the only method that Early-Gary was expected to use. Neither the waitress nor Walters noticed any defect. Under these circumstances, Early-Gary could not be guilty of negligence in placing the defective bottle on the table for use by its customers." Early-Gary, Inc. and H.J. Heinz Company v. Walters, 294 So.2d 181, 187, (Miss. 1974).
The judgment of the trial court is affirmed as to Louisville Motor Company; but the judgment is reversed and the cause remanded for a new trial as to Ford Motor Company.
AFFIRMED AS TO LOUISVILLE MOTOR COMPANY;
REVERSED AND REMANDED AS TO FORD MOTOR COMPANY.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.