# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CT-01812-SCT

*CARL PATTERSON, JR.*

*v.*

*T. L. WALLACE CONSTRUCTION, INC. AND
TURTLE CREEK DEVELOPMENT, INC.*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2010 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | AUDRY REGNAL BLACKLEDGE |
| | PETER ANDREW LAMPROS |
| | MATTHEW A. CATHEY |
| ATTORNEYS FOR APPELLEES: | WALTER WILLIAM DUKES |
| | ADAM B. HARRIS |
| | ANDY LOWRY |
| | ROGER C. RIDDICK |
| | BRADLEY SMITH KELLY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 05/02/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Carl Patterson Jr. sustained serious injuries in a single-vehicle motorcycle accident.

He sued T. L. Wallace Construction, Inc. (T. L. Wallace) and Turtle Creek Development,

Inc. (Turtle Creek) for damages. T. L. Wallace and Turtle Creek both filed motions for summary judgment. The Circuit Court of Marion County granted each motion for summary judgment. The Court of Appeals, finding the circuit court erred by granting summary judgment, reversed and remanded for a trial. Both defendants filed writs of certiorari, which we granted. After considering the parties' arguments and applicable law, we reverse the Court of Appeals' judgment and reinstate and affirm the Marion County Circuit Court's judgment.

**FACTS AND PROCEDURAL HISTORY**

¶2. In the afternoon of November 18, 2006, Patterson and Matt Sorrels, a friend, were riding their motorcycles on Cross Creek Parkway (the Parkway) in Hattiesburg, Mississippi. The Parkway is a public road adjacent to Turtle Creek Mall. Sorrels rode ahead of Patterson, with Patterson following approximately twenty feet behind Sorrels. While riding, Patterson struck debris[1] in the road, crashed, and suffered severe injuries.[2] Sorrels managed to navigate through the debris without incident.

¶3. On July 8, 2008, Patterson sued T. L. Wallace and Turtle Creek, alleging negligence.[3] Patterson alleged that Turtle Creek owned parcels of land located on each side of the Parkway where construction was underway. Turtle Creek hired T. L. Wallace to complete the projects. To facilitate its work, T. L. Wallace repaired a dirt haul road, which ran east and west of the Parkway. To repair the haul road, T. L. Wallace used a bulldozer to roll over

---

[1]Sorrels described the debris as a mixture of gravel and dirt.

[2]Due to his severe injuries, Patterson's right leg was amputated.

[3]Patterson sued other defendants who later were dismissed from the lawsuit.

2

portions of wet dirt on the west side of the Parkway, lay it in wind rows, and allow it to dry. Patterson alleged that T. L. Wallace and Turtle Creek negligently caused the debris to accumulate on the Parkway, failed to clean the debris, and failed to warn motorists of the danger.

¶4.     In his deposition testimony, Patterson could not answer whether T. L. Wallace was performing construction near the site of the accident, whether T. L. Wallace had caused the debris to be on the Parkway, and how long the debris had been on the road prior to his accident.[4]  Sorrels also had no idea how the debris got on the Parkway, who put it there, or how long the debris had been on the Parkway.  Sorrels did state that he had seen construction equipment in the area, but he was unsure whether the construction equipment was in the area the day of Patterson's accident.

¶5.     T. L. Wallace employees gave deposition testimony as well.  Through that testimony, T. L. Wallace presented proof that its work stopped 200 feet, or more, away from the Parkway and that grass existed between its work area and the Parkway.  T. L. Wallace also stated that it had worked on Turtle Creek's property on November 9, 10, and 13, 2006. Evidence shows T. L. Wallace also moved construction equipment to the property on

_____

[4]More specifically, Patterson could recall neither what the debris consisted of, its thickness, its length, its width, nor how long it had been on the Parkway.  Patterson had no idea if the defendants were aware of the debris.  He did not recall seeing any gravel trucks in the area the day of his accident.  He had no information regarding whether T. L. Wallace was performing construction near the accident site.  When asked what evidence he had to suggest the debris was deposited on the Parkway by either defendant, Patterson stated he did not have that information.  Patterson also had no information regarding whether T. L. Wallace was the company actually responsible for the debris on the Parkway.  Last, Patterson stated that he had no way to determine whether Turtle Creek or T. L. Wallace had anything to do with the debris on the Parkway.

November 13 and 17, 2006.[5] T. L. Wallace did not work on Turtle Creek's property again until November 20, 2006, two days after Patterson's accident.

¶6. Based on the deposition testimony, both T. L. Wallace and Turtle Creek moved for summary judgment. T. L. Wallace argued that Patterson had failed to show it had created the dangerous condition, failed to show it was working in the area the day of the accident, failed to show T. L. Wallace had actual or constructive notice of the debris, and failed to show an agency relationship existed between it and Turtle Creek. Turtle Creek argued that it had retained T. L. Wallace as an independent contractor, it did not cause the debris on the Parkway, and it was not responsible for debris on a public road.

¶7. On Turtle Creek's motion for summary judgment, the circuit court found that T. L. Wallace was an independent contractor, thus Turtle Creek was not liable for any alleged negligence of T. L. Wallace. The circuit court found that neither exception to the doctrine of respondeat superior applied in this case. Further, the circuit court determined that Turtle Creek had no duty to maintain the Parkway, a public road owned by the City of Hattiesburg. The circuit court also found no evidence suggesting that Turtle Creek had created the hazardous condition itself. Accordingly, the circuit court granted Turtle Creek's motion for summary judgment.

¶8. With regard to T. L. Wallace, the circuit court determined that Patterson had failed to present sufficient evidence regarding how the debris was deposited onto the Parkway and

_____

[5]On November 13, a John Deere tractor and box blade were delivered to the job site from a project nearby. On November 17, a trackhoe was delivered to the job site from Tupelo, Mississippi. T. L. Wallace did not move any equipment off the job site during that time.

how long the debris had been there at the time of the accident. The circuit court determined Patterson's allegations against T. L. Wallace were based on mere speculation, and T. L. Wallace did not owe Patterson a duty simply because it had worked in the area. The circuit court also noted that the Parkway is a public road owned by the City of Hattiesburg, stating: "it is likely that other contractors, members of the general public, or employees of the City of Hattiesburg created the hazardous condition that caused this accident." Finding Patterson had failed to prove the first element of negligence (duty), the circuit court granted T. L. Wallace's motion for summary judgment.

¶9.     Patterson appealed. In a five-to-three decision, the Court of Appeals reversed and remanded for a trial.[6] The majority stated that the circuit court's order "fails to take into consideration the evidence that [T. L. Wallace] employees were in the area on November 8, 9, 13, and 17; that T. L. Wallace had other equipment in the area; and that there was no evidence that anyone else could be responsible for the debris in the roadway."[7] The majority also noted evidence that T. L. Wallace had failed to clean the roadway, as was its practice, and that T. L. Wallace knew or should have known of the dangerous condition. Thus, based on circumstantial evidence, the majority determined summary judgment was inappropriate, and the case should have gone to a jury. The majority opinion failed to address Patterson's claims against Turtle Creek. The defendants timely filed petitions for certiorari, which we granted.

---

[6] *Patterson v. T. L. Wallace Constr., Inc.*, _ So. 3d _ , 2012 WL 1592154 (Miss. Ct. App. May 8, 2012).

[7] *Id*. at *2 (¶11).

5

## ANALYSIS

¶10. We review the circuit court's grant or denial of a motion for summary judgment de novo. **Ladnier v. Hester**, 98 So. 3d 1025, 1027-28 (¶9) (Miss. 2012). The moving party bears the burden to show no genuine issue of material fact exists. **Id**. at 1028 (¶10). Thus, we review the evidence in the light most favorable to the nonmoving party. **Id**. However, to survive summary judgment, the opposing party may not rely on mere allegations but must set forth specific facts to show genuine issues for trial. **Whiting v. Univ. of S. Miss.**, 62 So. 3d 907, 914 (¶9) (Miss. 2011). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

### I. Turtle Creek

#### A. Vicarious Liability

¶11. As previously mentioned, the Court of Appeals' majority opinion failed to discuss the issue of vicarious liability. Patterson argues that Turtle Creek paid T. L. Wallace by the hour, making T. L. Wallace an agent of Turtle Creek. Thus, Patterson states that Turtle Creek is responsible for the acts and omissions of T. L. Wallace. Both T. L. Wallace and Turtle Creek maintain that no agency relationship existed between them. Because T. L. Wallace is an independent contractor, its acts and omissions cannot be used to impute liability onto Turtle Creek.

¶12. Who constitutes an independent contractor is well defined:

An independent contractor is a person who contracts with another to do

6

something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.

*Chisolm v. Miss. Dep't of Transp.*, 942 So. 2d 136, 141 (¶7) (Miss. 2006) (quoting *Richardson v. APAC-Mississippi, Inc.*, 631 So. 2d 143, 148 (Miss.1994)). Generally, the principal cannot be held vicariously liable for torts committed by the independent contractor. *Id*.

¶13.    Turtle Creek proved no genuine issue of material fact exists regarding T. L. Wallace's status as an independent contractor. Patterson claims T. L. Wallace was Turtle Creek's agent, not an independent contractor, because Turtle Creek paid it by the hour. However, Patterson fails to cite any authority in support of his position. Also, the record belies Patterson's claim. Deposition testimony of T. L. Wallace employees shows that Turtle Creek paid T. L. Wallace a fixed price to remove dirt from its land. The prep work, which was performed prior to Patterson's accident, was included in that price. Based on the record, no evidence suggests that Turtle Creek controlled T. L. Wallace or its performance of the work. Thus, Turtle Creek cannot be held liable for the acts or omissions of T. L. Wallace. Turtle Creek was entitled to summary judgment on this issue, thus the circuit court did not commit error.

### B.  Negligence

¶14.    To show negligence, Patterson had to present evidence of duty, breach of duty, causation, and damages. *Huynh v. Phillips*, 95 So. 3d 1259, 1262 (¶9) (Miss. 2012).

7

Patterson claimed Turtle Creek failed to follow land-permit requirements[8] and conduct safety inspections.[9] Turtle Creek argues that Patterson failed to state authority in support of its position, and Patterson failed to show a genuine issue of material fact. It is Patterson's duty to provide support for his argument. He failed to do so. Thus, we decline to consider the argument. *See Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 37 (¶14) (Miss. 2007).

¶15. We agree with the circuit court's findings regarding Turtle Creek's alleged negligence. The record is void of any evidence that Turtle Creek deposited any debris onto the Parkway itself. Furthermore, although Turtle Creek owned property adjacent to the Parkway, it cannot be held liable for maintaining the public road. The Court has stated that:

> A possessor of land over which there is a public highway or private right of way is not subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care (a) to maintain the highway or way in safe condition for their use, or (b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.

*Martin v. Flanagan*, 818 So. 2d 1124, 1128 (¶17) (Miss. 2002).[10] Thus, the existence of

---

[8]Patterson claims the requirements are contained in the Mississippi Air and Water Pollution Control Law. *See* Miss. Code Ann. § 49-17-29 (Rev. 2012). The statute aims to protect state air and water resources from pollution. We have reviewed the statute, and we do not see how this imputes legal liability upon Turtle Creek for Patterson's injuries.

[9]Patterson argued that Turtle Creek was required to minimize offsite vehicle tracking of sediment, install erosion controls, and inspect the erosion controls once a week. Patterson claimed that Turtle Creek did not install erosion controls as required.

[10]Patterson argues his case is distinguishable from *Martin* because that case involved land in its natural state and, in his case, Turtle Creek had "graded, scraped, and improved" its land. The record suggests this activity took place in 2004, two years before Patterson's accident, and was performed by another contractor. The activity also was performed prior to the Parkway opening for public use in 2005.

debris on the Parkway near Turtle Creek's property is not sufficient to impose a duty on Turtle Creek to clean the debris or warn others of the condition. No evidence suggests that Turtle Creek performed some "unreasonable affirmative act" which would make it liable for any condition on the Parkway. *See id*. at 1128 (¶18). The retention-pond project, which stopped hundreds of feet away from the Parkway, is not an unreasonable act. Patterson failed to show, by a preponderance of the evidence, that Turtle Creek owed him a duty or breached any duty. Thus, Patterson's claims against Turtle Creek cannot survive summary judgment. We find the circuit court properly granted Turtle Creek's motion for summary judgment.

## II. T. L. Wallace

¶16.    T. L. Wallace argues that it owed no duty to Patterson and that Patterson failed to show that T. L. Wallace had created the hazardous condition. Conversely, Patterson argues that T. L. Wallace's negligence may be inferred through circumstantial evidence, that the evidence shows T. L. Wallace created the hazardous condition, and that T. L. Wallace breached its duty to clean the debris and warn motorists of the condition.

¶17.    The Court of Appeals' majority admitted that neither Patterson nor Sorrels could testify regarding the source of the debris. Then, it stated "there was no evidence that anyone else could be responsible for the debris in the roadway," and "[n]either of the Appellees could testify as to an alternate source of the accumulation in the roadway that led to Patterson's wreck and injuries." *Patterson v. T. L. Wallace Constr., Inc.*, _ So. 3d _, 2012 WL 1592154 (Miss. Ct. App. May 8, 2012). The majority improperly shifted the burden to T. L. Wallace to prove someone else had created the hazardous condition.

¶18.    In order to prevail on a negligence claim, the plaintiff must prove by a preponderance

9

of the evidence each element of negligence: duty, breach of duty, proximate cause, and damages. ***Huynh***, 95 So. 3d at 1262 (¶9). Duty and breach of duty are essential elements of negligence and should be demonstrated first. ***Id***. at 1262-63 (¶10). Patterson had to provide sufficient proof that T. L. Wallace was responsible for the debris on the Parkway, failed to clean it, and failed to warn motorists of the hazardous condition. He did not do so.

¶19.　Patterson stated that, because T. L. Wallace had performed construction in the area, T. L. Wallace must be responsible for the debris on the Parkway and must be liable for his injuries. Patterson's argument is similar to the doctrine of res ipsa loquitur. But, in pertinent part, this doctrine requires "the instrumentality causing the damage must be under the exclusive control of the defendant." ***Brown v. Baptist Mem'l Hosp. DeSoto, Inc.***, 806 So. 2d 1131, 1135 (¶17) (Miss. 2002). The doctrine does not apply here, because the Parkway is a public road owned by the City of Hattiesburg; it is not under T. L. Wallace's exclusive control.

¶20.　So, to survive summary judgment, Patterson had to show by a preponderance of the evidence that T. L. Wallace owed it a duty of care. A defendant who creates a hazardous condition has a duty to make safe or warn of that condition; ownership is immaterial. *See* ***Spann v. Shuqualak Lumber Co.***, 990 So. 2d 186 (Miss. 2008) (holding the defendant had a duty to refrain from creating an unreasonably dangerous condition – smoke – which could impede a motorist's vision). But the plaintiff must present sufficient evidence that the defendant created the hazardous condition.

¶21.　The parties do not dispute that T. L. Wallace was retained by Turtle Creek to perform work on a retention pond located west of the Parkway. To facilitate its work, T. L. Wallace

10

had repaired a haul road which stopped 200 feet away from the Parkway. T. L. Wallace's work entailed smoothing out wet dirt, and it moved equipment onto the property to complete the work. When deposed, neither Patterson nor Sorrels could provide answers regarding who was responsible for the debris and how long the debris was on the Parkway. Patterson showed that T. L. Wallace had worked near the site of his accident several days prior to his accident and a few days after his accident. But evidence that T. L. Wallace had worked in the area several days prior to Patterson's accident is insufficient to show that it created the hazardous condition. *See Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citing *Sears Roebuck & Co. v. Tisdale*, 185 So. 2d 916, 917 (Miss. 1966)) (holding mere proof of occurrence of an accident is insufficient to establish negligence).

¶22. Based on circumstantial evidence, the Court of Appeals' majority found the case should have survived summary judgment. In some cases, circumstantial evidence can be used to survive summary judgment. But the Court has stated that:

> In order to establish an allegation of negligence based upon circumstances, inferences and acts of a defendant in the nature of admissions, the proof of circumstances must be such that they will take the case out of the realm of conjecture and place it within the field of a legitimate inference of liability.

*Huynh*, 95 So. 3d at 1263.

¶23. Patterson relies on mere allegations and speculation to support his claims against T. L. Wallace. As previously mentioned, neither Patterson nor Sorrels knew who had deposited the debris on the Parkway or how long it had been there. As stated by the circuit court:

> [Patterson] insists that "the debris was in the road either as a result of Defendant's work at the project or because it fell off of Defendant's equipment." This insistence is mere speculation, and it is likely that other contractors, members of the general public, or employees of the City of

11

Hattiesburg created the hazardous condition that caused this accident.

We agree.

¶24. "[A] plaintiff may not rely solely upon the unsworn allegations in the pleadings or 'arguments and assertions in briefs or legal memoranda.'" *Whiting*, 62 So. 3d at 914 (¶9). At most, Patterson showed that T. L. Wallace performed construction in the area several days prior to his accident. No circumstantial evidence suggests T. L. Wallace caused the debris to accumulate on the Parkway. Without such evidence, Patterson's claims are insufficient to survive summary judgment. T. L. Wallace proved that the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, showed no genuine issue as to any material fact, and it was entitled to summary judgment. Accordingly, we find the circuit court did not err by granting T. L. Wallace's motion for summary judgment.

## CONCLUSION

¶25. The circuit court properly granted T. L. Wallace's and Turtle Creek's motions for summary judgment. Therefore, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Marion County Circuit Court.

¶26. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶27. I agree with the majority that summary judgment was appropriate in favor of Turtle Creek Development, Inc., as it owed no duty to Patterson nor was it T.L. Wallace

12

Construction's (T. L. Wallace) employer for the purpose of respondeat superior. However, I do not agree that summary judgment was appropriate in favor of T. L. Wallace. The majority says that Patterson's claims that T. L. Wallace created the dangerous condition, knew of the dangerous condition, and failed to warn of the dangerous condition, are nothing but mere speculation. With respect, I disagree. I find that Patterson has shown sufficient circumstantial evidence to create a genuine issue of material fact as to whether T. L. Wallace caused the debris to accumulate on the roadway. Accordingly, I conclude that summary judgment was inappropriate with respect to Patterson's claims against T.L. Wallace, and I respectfully dissent in part.

¶28.    In order to survive summary judgment on a negligence claim, the plaintiff must make a prima facie showing on every element of the claim (i.e. duty, breach, causation, and damages). *Huynh v. Phillips*, 95 So. 3d 1259, 1262 (Miss. 2012). Summary judgment is appropriate if "there is no genuine issue as to any material fact." M.R.C.P. 56(c). Accordingly, if a plaintiff can show that there is a genuine issue of material fact regarding each element of his negligence claim, summary judgment is inappropriate. Clearly, gravel and debris in the paved road caused Patterson to crash. The crash resulted in severe injuries to Patterson. The real questions at the summary judgment stage were whether T. L. Wallace owed Patterson a duty to keep the roadway clear of debris that it was alleged to have deposited and whether T. L. Wallace breached that duty by failing to keep the roadway clear.

¶29.    The majority correctly states that a party responsible for creating a hazardous condition owes a duty to remedy or warn of the condition, regardless of ownership. *See Spann v. Shuqualak Lumber Co.*, 990 So. 2d 186 (Miss. 2008). Therefore, at trial, in order

13

to show that T. L. Wallace had a duty to warn of the debris on the road, Patterson had to be able to show by a preponderance of the evidence that T. L. Wallace created the hazard by depositing the debris on the road. The majority states that, at summary judgment, Patterson had to have shown, by a preponderance of the evidence, that T. L. Wallace actually caused the debris to accumulate on the road and therefore owed Patterson a duty of care. I disagree that Patterson had to show this by a preponderance of the evidence. Summary judgment is inappropriate if there is a genuine issue of material fact. *See* M.R.C.P. 56(c). Therefore, I find that Patterson merely had to show that there was a disputed issue of material fact regarding whether T. L. Wallace had caused the debris to accumulate on the road. The record demonstrates that he did.

¶30.    The accident occurred on November 18, 2006. Patterson presented evidence that T. L. Wallace employees were working in the area in which the accident occurred on four out of the nine days immediately prior to the accident. On November 9, 2006, T. L. Wallace had rolled dirt onto the unpaved haul road on the construction site and set it in wind rows. It worked in the same area for ten hours on November 10, 2006, and ten more hours on November 13, 2006. Also on November 13, T. L. Wallace moved a tractor onto the east side of the roadway for the Kohl's project. On November 17, *the day before the accident*, T. L. Wallace delivered a track hoe to the unpaved construction site and in doing so had to traverse the public roadway on which the accident occurred.

¶31.    The majority concludes that "[t]here is no circumstantial evidence which suggests T. L. Wallace caused the debris to accumulate on the" roadway. I cannot agree with that statement. Overall, Patterson presented evidence that T. L. Wallace had been working

14

extensively in the area in the days prior to his accident, that it was performing work that involved moving large amounts of dirt and gravel, and that it had delivered heavy equipment to the site on at least two occasions, one of which was the day before Patterson suffered his accident. The large trucks that hauled the heavy equipment onto the muddy job site had to depart the same way they had come in: across the roadway that Patterson's vehicle had attempted to traverse at the time of the accident. Essentially, T. L. Wallace was moving a lot of dirt and dirt-moving machinery in the area. If there was dirt in the road, a jury could very well find from a preponderance of the evidence that T. L. Wallace had caused it to be there. In my view, there is sufficient circumstantial evidence to support an inference that T. L. Wallace caused the hazard and failed in its duty to warn of the hazard, which T. L. Wallace denied. Thus, there was a genuine issue of material fact that should have defeated summary judgment in T. L. Wallace's favor.

¶32.    It is a longstanding rule of Mississippi jurisprudence that, when circumstantial evidence supports an inference that a tortfeasor caused a dangerous condition, the question of the origin of the dangerous condition is one for the jury. *See Kurn v. Fondren*, 189 Miss. 739, 198 So. 727, 730 (1940) ("[W]hen the circumstantial evidence justified the jury in finding that the inference that the fire was set by a railroad locomotive is stronger and more probable than that it was set out from another cause, the question of the fire's origin was for the jury."). *See also Gulf, M. & N.R. Co. v. Sumrall*, 142 Miss. 56, 107 So. 281 (1926), *Illinois Cent. R. Co. v. Thomas*, 109 Miss. 536, 68 So. 773 (1915). "It is also well settled that negligence may be proven by circumstantial evidence and when the case turns on circumstantial evidence it should rarely be taken from the jury." *Davis v. Flippen*, 260 So.

2d 847, 848 (Miss. 1972) (citing *Cameron v. Hootsell*, 229 Miss. 80, 90 So. 2d 195 (1956). The Court of Appeals aptly cited the railroad cases in its opinion because they presented a factual scenario strikingly analogous to the one before us. In *Kurn*, the plaintiffs' land and farm were damaged in a fire. *Kurn*, 198 So. at 728. Although no one saw what caused the fire, the plaintiffs knew that a train owned by the defendants passed through the area shortly before the fire began. *Id.* The Court found that "there is no evidence which excludes the reasonable probability of a fire having been set by sparks from a passing [steam-driven] locomotive; but, on the contrary, that the evidence more strongly tends to show such a probability." *Id.* at 730.

¶33.   The facts before us are very similar. No known person witnessed T. L. Wallace deposit the debris on the ground, just as no one saw the train actually start the fire in *Kurn*. However, evidence was presented showing that T.L. Wallace was working extensively with dirt and dirt-moving equipment in the area near the crash before the crash occurred, just as there was evidence that the train in *Kurn* had passed through the area of the fire shortly before the fire was started. In *Kurn*, the Court found it important to note that there was no evidence indicating that the train *did not* start the fire, but rather that all of the evidence presented indicated that it was probable that the train started the fire. Here, there is no evidence indicating that T. L. Wallace did not deposit the debris on the road. On the contrary, the evidence presented (i.e., T. L. Wallace was working with dirt and dirt-moving equipment on several different days before the accident occurred) tends to show that it was probable that T. L. Wallace deposited the debris. Of course, at trial, a jury might fail to find such by a preponderance of the evidence. But for summary judgment purposes, the circumstantial

16

evidence is sufficient to support a genuine issue of material fact.

¶34. The majority states that the Court of Appeals "improperly shifted the burden to T. L. Wallace to prove someone else had created the hazardous condition." Again, I respectfully disagree. In moving for summary judgment, the burden is on the moving party to show that there is no genuine issue of material fact. ***Ladnier v. Hester***, 98 So. 3d 1025, 1028 (Miss. 2012). Also, "the nonmoving party should be given the benefit of every reasonable doubt." ***Id.*** As has been said, Patterson presented circumstantial evidence indicating that T. L. Wallace likely deposited the debris on the roadway. "[N]egligence may be proven by circumstantial evidence. . . ." ***Davis***, 260 So. 2d at 848. In looking at the circumstantial evidence presented by Patterson in the light most favorable to Patterson, there is compelling evidence that T. L. Wallace created the hazard on the roadway. In order to succeed on its motion for summary judgment, T. L. Wallace had to show that it was equally probable that anyone else created the hazard. T. L. Wallace failed to meet that burden.

¶35. I find that Patterson presented sufficient circumstantial evidence to withstand a motion for summary judgment against his negligence claim, and that T. L. Wallace failed to meet its burden to show there was no disputed issue of material fact on its motion for summary judgment. The circumstantial evidence presented by Patterson, viewed in the light most favorable to Patterson, creates a clear inference that T. L. Wallace created the hazard on the roadway and therefore owed Patterson a duty to warn of the unremediated danger. Circumstantial evidence is sufficient to support a negligence claim, and it is the province of the jury to weigh its credibility. Accordingly, I believe summary judgment was inappropriate, and I respectfully concur in part and dissent in part.

17